RECEIVED MAR 28 2008 ALVIN K. HELLERSTEIN

VLADECK, WALDMAN, ELIAS & ENGELHARD, P.C.
COUNSELORS AT LAW
1501 BROADWAY
NEW YORK, N.Y. 10036
TEL 212/403-7300
FAX 212/221-3172

ANNE C. VLADECK

March 28, 2008

**By Facsimile (w/o encl.)**
**By Hand (w/encl.)**
Honorable Alvin K. Hellerstein
United States District Court
Southern District of New York
500 Pearl Street - Room 1050
New York, New York 10007

Re: Amy Levenson v. Barclays PLC, et al.
07 CV 6656 (AKH) (AJP)

Dear Judge Hellerstein:

**Plaintiff's Position**

We represent plaintiff Amy Levenson ("Levenson" or "plaintiff") in this action against defendants Barclays Plc, Barclays Bank Plc, and Barclays Capital Inc. ("Barclays Capital") (collectively "Barclays," "Bank," or "defendants"). We write to request the Court's intervention concerning discovery scheduling, and for a protective order preventing defendants from conducting third party depositions for which they have served subpoenas beginning next Thursday, April 3. As explained further below, plaintiff served a version of this letter on March 17 and again on March 25. Defendants requested that their response, below, be included. Within less than two hours, plaintiff made revisions to her position in response to material misstatements that defendants' position included, and offered defendants a two hour window in which to revise their position. Defendants declined to do so and instead asked that a redline of plaintiffs' changes be included (Ex. O), and purported to reserve the right to file a separate sur-reply. (Ex. P)

Defendants are correct that we did not request such detailed schedule oversight at the pre-trial conference; in our past experience, no such order has been necessary. Although we are familiar with the difficulties presented by discovery for large companies, to date in this proceeding defendants have engaged in a course of delay that is, in our experience, unprecedented. On March 7, plaintiff noted that defendants appeared to be preparing to serve third party subpoenas, and asked that defendants coordinate scheduling since large numbers of



[Handwritten note by the Court:] The Court is not able to understand the discovery disputes. If pl. wishes to use my "2E" procedure, pl. should 1) set out the specific requests that def. is not responding to, 2) reasons why responses are inadequate and (3) def's should then state their opp'n. Replies are not necessary. 3-31-08 [signed] Al K Hellerstein

250793 v3

[Filed stamp] FILED 3/31/08

Honorable Alvin K. Hellerstein
March 28, 2008
Page 2

discovery disputes were still under discussion. Defendants responded "we would be happy to work with you on timing," (Ex. A), then – with no attempt at any such coordination – proceeded to serve subpoenas. (Ex. B) Plaintiff served a version of this letter on March 17, 2008. (Ex. C) On March 19 and 20, Defendants served subpoenas. (Ex. B)

Both parties served discovery requests on November 16, 2007. Since then, defendants have simply ignored every agreed deadline. For example, the parties agreed to a mutual extension of time to respond to discovery requests, made on November 16, 2007, until January 4, 2008. (Ex D) On that date, defendants informed plaintiff that they were not prepared to produce documents and declined plaintiff's request to commit to a specific date for document exchange. (Ex. E) On February 8, plaintiff sent a nine-page letter detailing the vast deficiencies in defendants' production and made a written offer to meet and confer for defendants to explain in what way they found the requests unreasonable. Defendants delayed over a month in responding, repeatedly failing to meet promised deadlines.[1]

Because of defendants' unprecedented delays, dozens of disputes about written discovery are still outstanding. Plaintiff served defendants with a letter setting forth the outstanding disputes in detail on Tuesday, March 25. (Ex. G) Although defendants had previously committed to provide a response within three business days, defendants retracted that commitment and said they could not respond until Monday, March 31. Defendants refused plaintiff's request to agree to postpone until the Court ruled the third party depositions that they had, over plaintiff's objection, and on dates not available for plaintiff's counsel, scheduled to begin on Thursday, April 3. (Ex. H) In the interest of narrowing or resolving the written discovery disputes, plaintiff agreed to postpone submission of those; defendants' response now seeks to introduce the very substantive issues on which they claimed to be unable to provide a response. We do not attempt to address defendants' numerous misstatements of fact, but note the irony that defendants rely on e-mails that plaintiff has produced when defendants have thus far refused to produce any e-mail or other electronic documents.[2]

---

[1] Defendants first committed to responding by Wednesday, February 27, then Friday, February 29, but did not in fact provide a response until Tuesday, March 4, less than two hours prior to a 2:00 p.m. scheduled meet and confer telephone conference. (Ex. F)

[2] Defendants' statement that they made any "invitation to meet and confer" on January 4, 2008 is false. Defendants made a limited offer to confer on electronic discovery only in late January, but when Maia Goodell spoke with Gerald Kuppusamy on February 14, 2008 in response to that offer, defendants were not prepared to respond to plaintiff's written search proposals (Ex. I at 9), were not prepared to explain defendants' computer systems, not even whether or for what dates e-mail would be available. Though defendants provided some of those answers almost a month later, to date, defendants have not provided any information on "Bloomberg" electronic messages.

250793 v3

Honorable Alvin K. Hellerstein
March 28, 2008
Page 3

### *Defendants Fail to Provide Written Discovery*

There is no basis for defendants' assertion that they have proceeded diligently with discovery. Defendants' statement that it "long ago produced everything that it agreed to produce" borders on a deliberate attempt to mislead the Court: defendants responded to 39 of 43 document requests with the objection that each is "overly broad, unduly burdensome, and seeks documents not relevant to the claims or defenses of any party" (the "Boilerplate Objection"). (Ex. J) This objection was the sole reason for defendants' flat refusal to provide any documents in response to 19 of plaintiff's document requests. In numerous instances, defendants used the Boilerplate Objection to refuse to produce the very documents they requested of Levenson, which are in defendants', not plaintiff's, custody and control.[3]

On January 14, defendants produced only 235 pages of documents, of which 150 were an employee handbook. This is what defendants produced "long ago." Plaintiff produced almost 2000 pages at that time; to date, more than two and a half months after the agreed deadline for document exchange, defendants have produced about 1000 pages, roughly half the documents that plaintiff, an individual, has produced. Of the documents defendants have produced, three-quarters were produced in the last three weeks, only after plaintiff made clear that she would move to compel production. Faced with the untenable nature of their refusals, defendants have now agreed to substantial additional discovery, including dozens of searches they simply failed to undertake previously (Ex. K), and have refused to give any date by which production will be made.

### *Defendants Notice Depositions Despite Refusal to Produce Documents*

In addition to the subpoenas discussed above, with no attempt at consultation, Barclays served two notices of plaintiff's deposition, for January 3 and again for March 5. (Ex. L) After plaintiff served a version of this letter explaining that she intends to bring this matter to the Court for resolution, and over Plaintiff's express objection to the return date, defendants served third party FMG Partners, a recruiting agency, and four third-party banks that are Levenson's potential employers, with document and deposition subpoenas returnable in early April. (Ex. B) Barclays was aware that plaintiff intended to move to compel comparator evidence, including qualifications, compensation, negotiations, and job offers – information of evident relevance to depositions about Levenson's other job offers and the worth of her work in

---

[3] As a striking example of the unreliable nature of defendants' positions, defendants assert that "Plaintiff identified only two 'comparators' in her interrogatory responses." This statement is flatly false (Pl. Resp. to Def. Ints. 5, 9, 10, 11, 12; Ex. M), as plaintiff made clear to defendants in the draft letter served on Tuesday (Ex. G at 8), yet defendants have made no effort in the months since those responses were served to search for or produce any document relevant to those individuals.

250793 v3

Honorable Alvin K. Hellerstein
March 28, 2008
Page 4

the industry. Barclays did not produce or agree to produce the missing discovery by these dates, and thus patently seeks to gain the unfair advantage of deposing these parties when Barclays will have had plaintiff's documents for months, but plaintiff will not have the Bank's pertinent documents.

Conducting depositions with so much outstanding written discovery risks significant inefficiency and inconvenience, particularly to third parties who are important to her future employment prospects. Witnesses may well need to be recalled when documents are finally produced. Thus, Plaintiff asks the Court to order Barclays to refrain from conducting depositions until after written discovery.

*Arbitration Hearing*

The parties currently have a scheduled arbitration on plaintiff's contract claims, which are related to her discrimination claims, beginning on May 5, 2008. Because there is little other explanation for defendants' flat refusal to agree to an efficient sequence of discovery, their actions begin to suggest that the Bank hopes to reap the advantage of discovery procedures available under the Federal Rules of Civil Procedure but not available in arbitration, such as third party depositions, prior to the arbitration hearing. Indeed, counsel first discussed sharing discovery between the two proceedings last September, but defendants only gave their agreement to this arrangement on March 11, 2008, the same week they notified plaintiff of their intent to serve third party subpoenas. At the same time, defendants apparently would deny plaintiff not only depositions but even basic documents to which she is entitled in both Federal Court and arbitration. The Court's intervention on scheduling is particularly warranted to ensure that defendants do not thus subvert the federal discovery process.

*Requested Court-Ordered Schedule and Protective Order*

Plaintiff requests that the Court order the following interim discovery deadlines, and enter a protective order forbidding defendants from conducting or noticing depositions, including depositions pursuant to subpoenas currently issued, prior to the listed dates:

| | |
|---|---|
| April 15, 2008 | Deadline to produce outstanding documents and interrogatory responses. |
| | (Discovery ordered by the Court after April 10 will be produced five business days after the Court order or five business days before any deposition to which it is potentially relevant, whichever is sooner.) |
| April 21-June 14, 2008 | Party depositions. |
| May 19-June 14, 2008 | Third party depositions. |

250793 v3

Honorable Alvin K. Hellerstein
March 28, 2008
Page 5

### Defendants' Position

There is absolutely no justification for the discovery limitations Plaintiff asks the Court to impose on Barclays, which represent a transparent attempt by Plaintiff to prevent Barclays from proceeding with third-party discovery that Plaintiff fears will yield evidence unhelpful to her. Plaintiff made no request for the limitations she now seeks at the pre-trial conference with the Court in October, 2007 or at any time in the more than five months since then, bringing this motion only on the eve of third-party depositions about which she has known for weeks. Plaintiff's application should be denied.

Barclays' third-party discovery relates to Plaintiff's allegation that "[s]he ... received three indicative job offers, two for $2 million and one for $1.8 million annual compensation for 2006, with other firms also expressing interest at similar rates." (Complaint ¶24) In interrogatory responses, Plaintiff identified the firms who supposedly gave her the offers as "BNP", Deutsche Bank and Morgan Stanley, and she named Bank of America as the entity from whom she had an "express[ion] of interest at [a] similar rate[ ]." (Plaintiff's Response to Defendants' First Set of Interrogatories dated January 7, 2008) Barclays has served subpoenas on those four firms and on FMG Partners, an employment agency Plaintiff used. None of these five entities has sought to quash or modify the subpoenas. Depositions pursuant to the subpoenas begin on April 3.

Plaintiff's effort to forestall discovery concerning her supposed offers is baseless and is patently motivated by her concern as to what the discovery will show. Despite Plaintiff's allegation that she received numerous offers, Plaintiff's document production contains none. To the contrary, the documents Plaintiff has produced suggest that she had no offer. An e-mail from FMG to Plaintiff concerning discussions with Morgan Stanley states that Morgan Stanley was "having difficulty cobbling together a job that makes sense for you." (Ex. N) And, perhaps tellingly, Plaintiff's counsel in this letter describes Barclays' third-party discovery as relating not to any "offers" from the firms Plaintiff has identified, but rather to "job discussions" Plaintiff had with them.

Plaintiff's contention that third-party discovery should be delayed because "Barclays was aware that Plaintiff intended to move to compel comparator evidence, including compensation, negotiations and job offers" is utterly nonsensical. The discovery Barclays seeks from third parties has absolutely nothing to do with any discovery Barclays could provide plaintiff. *Nothing* Plaintiff could seek to compel from Barclays could have the slightest bearing on the subject of the third-party discovery – plaintiff's allegation that she received offers from other entities. And Plaintiff knew long ago that Barclays would not agree to produce the vast information she has sought concerning other Barclays employees. (Barclays has already produced extensive documents and information concerning numerous other employees, despite Plaintiff having identified only two "comparators" in her interrogatory responses.)

250793 v3

Honorable Alvin K. Hellerstein
March 28, 2008
Page 6

      Plaintiff's claim that Defendants' are seeking to use deposition testimony in the arbitration Plaintiff has brought while denying Plaintiff the same opportunity is equally baseless. Indeed, it was Plaintiff, not Barclays, who proposed using discovery from this lawsuit in the arbitration. Furthermore, Plaintiff's own proposed order providing for party depositions beginning April 21 allows for witnesses to be deposed for two weeks before the arbitration begins, on May 5.

      Plaintiff's contention that she made an "express objection to the return date" of the subpoenas is simply false. To the contrary, Barclays offered to discuss scheduling of the depositions, and Plaintiff rejected that offer. On March 7, 2008, after Defendants had asked Plaintiff's counsel to provide the full name of the entity Plaintiff identified in her interrogatory response as "BNP," Plaintiff's counsel asked to be notified before Barclays served any third-party subpoenas so that timing could be discussed. Barclays readily agreed. Similarly, in a letter to us dated March 12, 2008 regarding other discovery disputes, Plaintiff's counsel said regarding third party subpoenas only that they would "look forward to receiving the notice mandated by Rule 45(b)(1)." On March 14, 2008, Barclays' counsel emailed Plaintiff's counsel informing her of Barclays' intention to serve subpoenas for depositions on April 3, 4, 7, 8 or 9 and asking whether those dates would work. Plaintiff's counsel said nothing about scheduling conflicts with these dates, nor did she offer alternative dates. Instead, she made only the same baseless argument made here that it would be "inefficient" to go forward with third-party depositions.

      Nor is there any need to set a date for production of documents. Contrary to Plaintiff's allegations of delay by Barclays, Barclays long ago produced everything it agreed to produce in its responses to Plaintiff's discovery requests. Furthermore, Defendants made repeated offers to meet and confer on discovery matters – beginning on January 4, 2008 – which Plaintiff simply ignored for weeks. Once Plaintiff belatedly accepted Defendants' repeated invitation to meet and confer, Barclays agreed to produce additional documents in an effort to avoid the need to involve the Court. When Plaintiff brings a motion to compel – which she has been indicating for weeks she intends to do bring – and if the Court were to order any further production, a production date should be set at that time.

      Finally, there is no reason to delay party depositions. As Plaintiff's counsel notes, Barclays has already noticed Plaintiff's deposition twice, and Plaintiff has twice declined to appear. There is no basis for requiring Barclays to wait three more weeks before deposing Plaintiff. Indeed, Plaintiff has not even attempted in this letter to articulate any reason why her deposition should not go forth immediately.

250793 v3

Honorable Alvin K. Hellerstein
March 28, 2008
Page 7

In short, Defendants have proceeded diligently with discovery, and there is no basis for Plaintiff's efforts to obstruct Barclays' discovery.

Respectfully submitted,

*Anne Vladeck*

Anne C. Vladeck

cc: Robin D. Fessel, Esq. (by facsimile w/o encl. and by hand w/ encl.)
Gerald C. Kuppusamy, Esq. (by facsimile w/o encl. and by hand w/ encl.)
John M. Brickman, Esq. (by facsimile w/o encl. and by mail w/ encl.)

250793 v3